**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| NATHAN KEVIN TURNER, CDCR #C-44886,<br><br>Plaintiff,<br><br>vs.<br><br>BONNIE DUMANIS, District Attorney; SAN DIEGO POLICE DEPARTMENT; A. FRAGOSO, Detective; J. DREIS, Detective; SAN DIEGO POLICE CRIME LAB; EDMOND G. BROWN, Jr., Attorney General,<br><br>Defendants. | Civil No.   08-0360 W (RBB)<br><br>**ORDER:**<br><br>**1) GRANTING MOTIONS TO DISMISS ON BEHALF OF DEFENDANTS EDMOND G. BROWN, SAN DIEGO POLICE DEPARTMENT AND DETECTIVE J. DREIS PURSUANT TO FED.R.CIV.P. 12(b)(6)**<br>**[Doc. Nos. 10, 12]**<br><br>**AND**<br><br>**2) GRANTING MOTION TO DISMISS COMPLAINT ON BEHALF OF DEFENDANT BONNIE DUMANIS PURSUANT TO FED.R.CIV.P. 12(b)(6)**<br>**[Doc. No. 13]** |

**I.   Procedural Background**

Nathan Kevin Turner ("Plaintiff") has filed a civil rights complaint pursuant to 42 U.S.C. § 1983 seeking post-conviction access to biological evidence introduced against him during his 1982 trial for peeping, burglary, rape and robbery. Plaintiff claims California's Attorney General Edmond G. Brown, San Diego County District Attorney Bonnie Dumanis, the San

1  Diego Police Department, its Crime Lab, and San Diego Police Detectives J. Dreis and A.
2  Fragoso ("Defendants"), have violated his Fifth, Sixth, Eighth and Fourteenth Amendment rights
3  by either refusing to provide him with access to, or "in bad faith" destroying, this physical
4  evidence. Plaintiff asserts this evidence if now subject to DNA testing not available at the time
5  of his trial twenty-six years ago, would "completely and irrefutably exonerate[] [him]." (Compl.
6  ¶¶ 15-17, 91-97.)

**II.     Defendants' Motions to Dismiss**

Defendants Brown, Dumanis, the San Diego Police Department and Detective J. Dries have filed three separate motions to dismiss Plaintiff's Complaint for failure to state a claim upon which § 1983 relief can be granted pursuant to FED.R.CIV.P. 12(b)(6) [Doc. Nos. 10, 12, 13].[1]

First, Defendant Brown moves to dismiss on grounds that he may not be held liable based on a respondeat superior theory. Brown further argues Plaintiff's claims are untimely, precluded by the 'favorable termination' doctrine set forth in *Heck v. Humphrey*, 512 U.S. 477 (1994), and barred by collateral estoppel. *See* P&As in Supp. of Def. Brown's Mot. to Dismiss (hereafter 'Brown MTD') at 3-8. Second, Defendants San Diego Police Department ("SDPD") and Detective J. Dreis move to dismiss on grounds that Plaintiff's Complaint fails to comply with FED.R.CIV. P. 8, the SDPD is not a 'person' subject to suit under § 1983, and Plaintiff has failed to allege any personal acts on the part of Detective Dreis which may support any constitutional

---

[1] Plaintiff has not successfully served the remaining Defendant, A. Fragoso, a San Diego Police Detective, who is now retired. *See* Defs. San Diego Police Dept. & Dreis' Mem. of P&As in Supp. of Mot. to Dismiss at 2 n.2. The United States Marshal did attempt to serve Fragoso at San Diego Police Dept. Headquarters at Plaintiff's direction based on Plaintiff's assertion that "they have data where [Fragoso] can be located." [Doc. No. 5]. However, while someone else in Internal Affairs signed the U.S. Marshal Form 285, it is not clear whether this person had the authority to accept service on Fragoso's behalf. Moreover, once the remaining San Diego Police Department defendants filed their Motion, which notified both Plaintiff and the Court that they "had no information indicating that service ... ha[d] been effectuated" upon Fragoso, and therefore, were not entering an appearance on his behalf, Plaintiff was required to request an extension of time to re-attempt service pursuant to FED.R.CIV.P. 4(m) at a different location. He did not; therefore, Defendant Fragoso has not been timely served and the Court has no personal jurisdiction over him. *See Walker v. Sumner*, 14 F.3d 1415, 1421-22 (9th Cir. 1994) (where a pro se plaintiff fails to provide the Marshal with accurate and sufficient information to effect service of the summons and complaint, the court's sua sponte dismissal of the unserved defendants is appropriate); *Mississippi Pub. Corp. v. Murphree*, 326 U.S. 438, 444-45 (1946) ("[S]ervice of summons is the procedure by which a court ... asserts jurisdiction over [a] party.").

1  violation. *See* P&As in Supp. of Defs. City of San Diego & J. Dreis' Mot. to Dismiss (hereafter
2  "City MTD") at 3-8.  Finally, Defendant Bonnie Dumanis acknowledges the Ninth Circuit has
3  recognized a limited due process right to seek post-conviction access to biological evidence in
4  a § 1983 action in *Osborne v. District Attorney's Office*, 521 F.3d 1118 (9th Cir. 2008), *pet. for*
5  *cert. granted*, 129 S. Ct. 488 (U.S. Nov. 3, 2008) (No. 08-6).  However, Dumanis nevertheless
6  seeks dismissal on grounds that Plaintiff's Complaint seeks relief based on claims
7  distinguishable from those recognized in *Osborne*. *See* P&As in Supp. of Def. Bonnie Dumanis'
8  Mot. to Dismiss (hereafter "Dumanis MTD") at 5-6.

**A.    Standard of Review pursuant to FED.R.CIV.P. 12(b)(6)**

A Rule 12(b)(6) dismissal may be based on either a "'lack of a cognizable legal theory' or 'the absence of sufficient facts alleged under a cognizable legal theory.'" *Johnson v. Riverside Healthcare System, LP*, 534 F.3d 1116, 1121-22 (9th Cir. 2008) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990)).  In other words, the plaintiff's complaint must provide a "short and plain statement of the claim showing that [he] is entitled to relief." *Id.* (citing FED.R.CIV.P. 8(a)(2)). "Specific facts are not necessary; the statement need only give the defendant[s] fair notice of what ... the claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 127 S. Ct. 2197, 2200 (2007) (internal quotation marks omitted).

Still, every complaint must, at a minimum, plead "enough facts to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, __, 127 S.Ct. 1955, 1974 (2007); *Weber v. Dept. of Veterans Affairs*, 521 F.3d 1061, 1065 (9th Cir. 2008).  Facts which are alleged in the complaint are presumed true, and the court must construe them and draw all reasonable inferences from them in favor of the plaintiff. *Cahill v. Liberty Mutual Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996).

In addition, factual allegations asserted by pro se petitioners, "however inartfully pleaded," are held "to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519-20 (1972).  Thus, where a plaintiff appears in propria persona in a civil
28  / / /

rights case, the Court must construe the pleadings liberally and afford plaintiff any benefit of the doubt. *See Karim-Panahi v. Los Angeles Police Dept.*, 839 F.2d 621, 623 (9th Cir. 1988).

Nevertheless, and in spite of the deference the court is bound to pay to any factual allegations made, it is not proper for the court to assume that "the [plaintiff] can prove facts which [he or she] has not alleged." *Associated General Contractors of California, Inc. v. California State Council of Carpenters*, 459 U.S. 519, 526 (1983). Nor must the court "accept as true allegations that contradict matters properly subject to judicial notice or by exhibit" or those which are "merely conclusory," require "unwarranted deductions" or "unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir.) (citation omitted), *amended on other grounds*, 275 F.3d 1187 (9th Cir. 2001); *see also Ileto v. Glock Inc.*, 349 F.3d 1191, 1200 (9th Cir. 2003) (court need not accept as true unreasonable inferences or conclusions of law cast in the form of factual allegations).

### B. Plaintiff's Allegations

Plaintiff claims to have been "formally charged with fifty-five counts ranging from peeping, burglary, rape [and] robbery[] while armed with a deadly weapon," was represented by counsel at trial, convicted on March 22, 1982, and sentenced to a "very lengthy determinant state prison term" of 174 years and 4 months. (Compl. ¶¶ 15, 25.) Plaintiff alleges that during investigation and trial, "the biological evidence, that is, 'all' the semen samples taken directly from the victims['] multiple slides, e.g., vaginal smears, mouth[] smears[] and [a] tampon" were tested by the San Diego Police Department crime lab and revealed to be blood type "A" and "B." Plaintiff claims his blood type is "O." (*Id.* ¶¶ 17-19.) Plaintiff alleges that when this "became known to the prosecution, [he] was offered 75 years to plead to all counts," but he refused to plea because "he would be pleading guilty to crimes that he did not commit and did not believe in face of all the overwhelming physical that excluded [him], that he would be found guilty." (*Id.* ¶ 19.)

Plaintiff alleges his trial commenced on January 11, 1982. (*Id.* ¶ 22.) Throughout trial, Plaintiff claims he "maintained his innocence of any crimes of robbery, rape, burglary and peeping" against all 18 victims, claiming he "had absolutely nothing to do with these crimes."

(*Id.* ¶¶ 16, 23.) However, "in order for [the] prosecution to undermine th[e] explosive evidence that was completely in [his] favor," and "in order to get a conviction ... notwithstanding [his] innocence," Plaintiff claims prosecutors "introduced a false/alleged confession, and several inconclusive samples that did not match [his] DNA blood type." (*Id.* ¶ 20.) Plaintiff claims Defendant San Diego Police Detectives J. Dreis and A. Fragoso "were responsible for" the introduction of this evidence. (*Id.*) Plaintiff further claims he was "denied access to test and evaluate this evidence" at trial because his trial counsel "never employed the services of an expert witness or an investigator to confirm the prosecutor's findings," and the judge denied "all requests for funds to employ such services." (*Id.* ¶ 21.)

Plaintiff claims he was convicted on March 22, 1982, that his conviction was affirmed by the California Court of Appeal "on or about March 30, 1983." (*Id.* ¶ 24.) Plaintiff claims the issues raised in his direct appeal in California's Fourth District Court of Appeal, Case No. 13857 included challenges to the admissibility of a confession influenced by PCP use, incompetent counsel, the trial court's refusal to appoint new counsel, its failure to properly instruct an alternate juror and the imposition of an "unconstitutional" sentence. (*Id.* ¶ 26.) Plaintiff alleges his appeal was rejected as "meritless" and both his conviction and sentence were affirmed. (*Id.*)

Plaintiff also refers to a "direct appeal" which was "lost in August 26, 1983," and claims it is "unclear" whether he filed a petition for review with the California Supreme Court. (*Id.* ¶ 25.) He further alleges that "according a the federal case opinion," which may be either Plaintiff's initial habeas corpus petition filed on March 10, 1985, or his Ninth Circuit appeal in *Turner v. Compoy*, 827 F.2d 526 (9th Cir. 1987), the "State Supreme Court summarily denied a petition for review [of Plaintiff's direct appeal] without comment." (*Id.* ¶¶ 27-34.) Plaintiff alleges the filing and decision date, as well as the issues raised in his petition for review to the California Supreme Court, are "unknown." (*Id.* ¶ 27.)

From that time on, Plaintiff alleges to have had "litigation ongoing until the AEDPA [Anti-Terrorism and Effective Death Penalty Act] of 1996," including numerous state and federal petitions for writ of habeas corpus. (*Id.* ¶¶ 24, 28-40.) In at least one of these petitions, San Diego Superior Court Case No. HC14929, which was denied on May 19, 1997, Plaintiff

1 claims to have raised eleven grounds for relief, including one challenge to the "introduction and
2 use of DNA evidence." (*Id.* ¶ 38.) A writ of habeas corpus followed in the Fourth District Court
3 of Appeal, Case No. D029361, which likewise raised a claim of "excluded exculpatory DNA
4 evidence." However, on October 3, 1997, this petition was also denied because Plaintiff "did
5 not present a prima facie case." (*Id.* ¶ 39.)

6 Plaintiff filed another state habeas corpus petition in San Diego Superior Court Case No.
7 HC14929 (2d Petition) which he claims was denied on March 13, 1998, for "failing to provide
8 justification for filing numerous habeas claims." (*Id.* ¶ 40.) Plaintiff claims this petition
9 included a motion to introduce new DNA evidence. (*Id.*)

10 Sometime in 2000 or 2001, Plaintiff alleges to have contacted the Innocence Project at
11 Cardoza School of Law and through them was able to obtain "all the destruction orders" for his
12 case. (*Id.* ¶ 42.) Plaintiff admits an Order to destroy or release trial exhibits in his criminal case
13 was issued by the San Diego Superior Court sometime in either February or August 1987. (*Id.*
14 ¶¶ 25, 68.)

15 However, on December 4, 2002, Plaintiff alleges he filed a motion in San Diego Superior
16 Court requesting the retention of biological material pursuant to California Penal Code § 1417.9,
17 the performance of DNA testing, appointment of counsel and a new trial pursuant to California
18 Penal Code § 1405.[2] (*Id.* ¶ 43.)

19 Plaintiff claims that Deputy Public Defender Susan Clemens was assigned to assist him
20 in locating and preserving DNA evidence on or about September 2, 2003. (*Id.* ¶ 44.) Plaintiff
21 claims Clemens learned from the San Diego Police Department's property room supervisor and
22 the senior exhibit custodian for the San Diego Superior Court that "all evidence presented at [his]
23 trial remained in the court's possession after [his] conviction and was destroyed after the

---

[2] California Penal Code § 1405 provides, in pertinent part, that "[a] person who was convicted of a felony and is currently serving a term of imprisonment may make a written motion before the trial court ... for performance of forensic deoxyribonucleic acid (DNA) testing." CAL. PENAL CODE § 1405(a). "An indigent convicted person may request appointment of counsel." *Id.* § 1405(b)(1). "Section 1405, subdivision (f) directs the trial court to grant the motion for DNA testing if eight conditions are met." *Richardson v. Superior Court*, 43 Cal. 4th 1040, 1046 (2008). The first condition requires that "the evidence to be tested is available an in a condition that would permit the DNA testing requested in the motion." *Id.* (citing CAL. PENAL CODE § 1405(f)(1)).

1  California Court of Appeal affirmed [his] conviction." (*Id.*) However, Clemens also informed
2  Plaintiff that she "wanted to conduct her own research to determine if 'any' of [his] DNA
3  evidence was available." (*Id.* ¶ 65.)

4  On November 21, 2003, Plaintiff claims Clemens advised him that she had scheduled a
5  hearing in Superior Court in Plaintiff's case, but that "all the evidence had indeed been
6  destroyed." (*Id.* ¶ 66.) Plaintiff claims Clemens "enclosed declarations from the San Diego
7  County Police Department Senior Exhibit Custodian of Records and Property Room
8  Supervisor." (*Id.*)

9  On or about February 13, 2004, Plaintiff alleges Clemens "wrote Plaintiff another letter
10 reiterating that Plaintiff's biological evidence had been destroyed," and that "we are unable to
11 proceed with DNA testing because all the evidence is gone." (*Id.* ¶¶ 45, 67.) Clemens further
12 noted, however, that she was "looking into the timing and circumstances of the destruction of
13 evidence to determine if there [wa]s any relief available" based on claims of its "illegal
14 destruction." (*Id.* ¶ 67.)

15 On or about March 17, 2005, Plaintiff claims he received another letter from Clemens
16 indicating she had "abandoned the possible illegal destruction of evidence investigation,"
17 because Plaintiff did not "request the preservation of evidence in [his] federal filing." (*Id.* ¶ 69.)
18 On the same day, Plaintiff claims Clemens wrote to the Superior Court Judge indicating that the
19 "investigation [wa]s now complete ... [and that] it can not be shown that the evidence was
20 wrongfully destroyed." (*Id.* ¶ 73.)

21 Plaintiff claims he told Clemens "her position was in error because the San Diego Police
22 Department and the district attorney's office had specific knowledge that Plaintiff had an on-
23 going post-conviction litigation pending, and [therefore] it was their obligation to check <u>before</u>
24 any such destruction would take place." (*Id.* ¶ 70 (emphasis original).) However, Clemens
25 "closed Plaintiff's case under Penal Code § 1405," and "refused to provide Plaintiff with further
26 assistance." (*Id.* ¶ 71.)

27 Plaintiff also claims that on or soon after March 17, 2005, the San Diego Superior Court
28 denied his Motion for DNA testing pursuant to Penal Code § 1405, and denied his petition for

habeas corpus. (*Id.* ¶ 82.) Plaintiff claims his Penal Code § 1405 Motion was denied because he has "fail[ed] to meet the prima facie elements enumerated under P[enal] C[ode] § 1405," and specifically "<u>failed to show the material sought for testing is available</u>." (*Id.* ¶¶ 83-84 (emphasis original).)

Plaintiff asserts that "[i]n light of the state's destruction of evidence in his case," "there is absolutely no question that the police authorities of San Diego County knew that [he] did not commit any such crime of rape," and that they "intentionally had all Plaintiff's evidence destroyed so that he could not prove his innocence." (*Id.* ¶¶ 72, 85.)

Thus, while Plaintiff alleges the biological evidence in his case was destroyed "in bad faith to hide the true exculpatory results," (*id.* ¶ 85), he also seeks equitable and injunctive relief "including, but not limited to, a search for the release of any and all biological evidence, notwithstanding the fact that Defendant Bonnie Dumanis claims that the DNA evidence was destroyed on August 6, 1987." (*Id.* at 24 "Prayer for the Appropriate Relief" ¶ 1.) Plaintiff further seeks a court-ordered investigation into "whether or not the defendants['] predecessors intentionally ordered ... DNA evidence to be destroyed during [his] on-going post-conviction litigation" as well as a determination as to whether it was "illegally done in 'bad faith' to hide its exculpatory value." (*Id.* ¶ 5.)

### C. 42 U.S.C. § 1983

To state a claim under § 1983, Plaintiff must allege that: (1) the conduct he complains of was committed by a person acting under color of state law; and (2) that conduct violated a right secured by the Constitution and laws of the United States. *Humphries v. County of Los Angeles*, __ F.3d __, 2009 WL 102101 at *10 (9th Cir. 2009) (citing *West v. Atkins*, 487 U.S. 42, 48 (1988)).

#### 1. "Person"

First, the SDPD seeks dismissal because it is not a "person" subject to suit under § 1983. (*See* City MTD at 4-5.)[3]

---

[3] Plaintiff's Complaint names both the SDPD and the SDPD Crime Lab as Defendants. (Compl. at 2-3.) The City's MTD does not differentiate between the two.

The Court agrees. While local governmental units, such as counties or municipalities, are considered "persons" within the meaning of Section 1983, *see Will v. Michigan Dept. of State Police*, 491 U.S. 58, 70 (1989); *Monell v. Dept. of Social Servs.*, 436 U.S. 658 690-91 & n.54 (1978), municipal departments and sub-units, including police departments, are not. *See United States v. Kama*, 394 F.3d 1236, 1239 (9th Cir. 2005) (Ferguson, J., concurring) (finding municipal police departments and bureaus are generally not considered "persons" within the meaning of 42 U.S.C. § 1983); *Vance v. County of Santa Clara*, 928 F. Supp. 993, 995-96 (N.D. Cal. 1996) (holding that the naming of a municipal department as a defendant "is not an appropriate means of pleading a § 1983 action against a municipality"); *Brockmeier v. Solano County Sheriff's Dept.*, 2006 WL 3760276, *4 (E.D. Cal. 2006) (finding that sheriff's department is a municipal department and not a proper defendant for purposes of plaintiff's § 1983 claims).

For these reasons, the Court GRANTS the City's Motion to Dismiss pursuant to FED.R.CIV.P. 12(b)(6) to the extent Plaintiff seeks to sue both the SDPD and its Crime Lab under section 1983.

**2.     Individual Liability – Defendants Brown & Dreis**

Both Defendants Brown, the current Attorney General for the State of California, and SDPD Detective Dries also move to dismiss Plaintiff's claims on grounds that he has failed to allege that either of them are personally liable for violating his constitutional rights. (*See* Brown MTD at 3-4; City MTD at 5-6.)

There is no respondeat superior liability under 42 U.S.C. § 1983. *Palmer v. Sanderson*, 9 F.3d 1433, 1437-38 (9th Cir. 1993). To state a claim against a state official under section 1983, Plaintiff must allege direct personal participation by the defendant. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). "[A] supervisor [may be held] liable for the acts of his subordinates 'if the supervisor participated in or directed the violations, or knew of the violations [of subordinates] and failed to act to prevent them.'" *Preschooler II v. Clark County School Bd. of Trustees*, 479 F.3d 1175, 1182 (9th Cir. 2007) (quoting *Taylor*, 880 F.2d at 1045.) However, "a supervising official may be liable in his individual capacity [only] if he 'set in motion a series of acts by others, or knowingly refused to terminate a series of acts by others, which he knew

or reasonably should have known, would cause others to inflict constitutional injury.'" *Beck v. City of Upland*, 527 F.3d 853, 871 (9th Cir. 2008) (quoting *Larez v. City of Los Angeles*, 946 F.2d 630, 646 (9th Cir. 1991) (internal citations omitted)).

Here, Plaintiff alleges Brown is being sued merely because he "is the Attorney General of the State of California who resides [sic] over all." (Compl. ¶ 14.) Plaintiff makes no further allegations involving Defendant Brown. Thus, because § 1983 liability requires allegations of direct personal participation causing constitutional injury, *Taylor*, 880 F.2d at 1045, and does not, without more permit suit against a state official based solely on the office he or she currently holds, *Palmer*, 9 F.3d at 1437-38, the Court GRANTS Defendant Brown's Motion to Dismiss Plaintiff's Complaint pursuant to FED.R.CIV.P. 12(b)(6). *See also Clifton v. Cline*, 2009 WL 256548 at *5 (E.D. Cal. Feb. 4, 2009) (unpublished) (dismissing Attorney General Brown as defendant in § 1983 action alleging due process right to access DNA evidence on grounds because complaint did not allege that the Attorney General "[wa]s connected to the denial of Plaintiff's constitutional rights based on [his] responsibilities under Section 1405.")

As for Detective Dreis, Plaintiff seeks to sue him because he "collected crime scene evidence and stored it," was "a reporting officer," and was "responsible for th[e] introduction of [a] false/alleged confession and evidence" introduced at Plaintiff's 1982 trial. (*Id.* ¶¶ 13, 20.) Plaintiff does not allege, however, that Dreis personally violated his due process rights by refusing to provide him with access to the biological evidence he now seeks or, in the alternative, was the person responsible for the destruction of that evidence. *See Paine v. City of Lompoc*, 265 F.3d 975, 984 (9th Cir. 2001) (whether or not each defendant "is a participant in the incidents that could give rise to liability" is a necessary element of the § 1983 claim). For these reasons, the Court also dismisses Plaintiff's claims against Defendant Dreis and GRANTS his Motion to Dismiss pursuant to FED.R.CIV.P. 12(b)(6).[4]

### 3. Constitutional Violations

---

[4] Because the Court finds Plaintiff's Complaint fails to state a claim against either Defendant Brown or Dreis for these fundamental reasons, it need not reach those Defendants' alternative bases for dismissal, *i.e.*, that Plaintiff's Complaint fails to comply with FED.R.CIV.P. 8, his claims are barred both by *Heck v. Humphrey*, 512 U.S. 477 (1994), the statute of limitations, and are further subject to collateral estoppel. (Brown MTD at 5-8; City MTD at 3-4.)

The sole remaining Defendant, the current District Attorney for the County of San Diego, Bonnie Dumanis, also moves to dismiss Plaintiff's Complaint pursuant to FED.R.CIV.P. 12(b)(6). Dumanis claims that while the Ninth Circuit has held that a due process right to access material evidence for post-conviction testing may be raised in a civil rights action pursuant to 42 U.S.C. § 1983, *see Osborne v. District Attorney's Office*, 423 F.3d 1050, 1054 (9th Cir. 2005) ("*Osborne I*"), the claims in Plaintiff's Complaint are distinguishable and exceed the limited right recognized as cognizable in a § 1983 action in *Osborne v. District Attorney's Office*, 521 F.3d 1118 (9th Cir. 2008) ("*Osborne II*"), *cert. granted*, 129 S. Ct. 488 (U.S. Nov. 3, 2008) (No. 08-6).

The crux of this case, like the *Osborne* case, lies at the intersection of § 1983 and habeas corpus. These two post-conviction avenues of relief may, and sometimes must, be kept separate; but often they overlap. As a preliminary matter, "when a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus." *Osborne I*, 423 F.3d at 1053 (quoting *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973).) Thus, if a prisoner brings a civil rights action under § 1983, which if successful, would "'necessarily imply the invalidity'" of his conviction or sentence, it must be dismissed "unless the plaintiff ... demonstrate[s] that the conviction or sentence has already been invalidated." *Id.* (quoting *Heck*, 512 U.S. at 487). *Heck*'s conclusion relies on the "hoary principle that civil tort actions are not the appropriate vehicles for challenging the validity of outstanding criminal judgments." *Heck*, 512 U.S. at 486. A constitutional challenge to the "fact or duration" of confinement lies instead, at the "core" of habeas corpus. *Id.* at 487.

However, just because a claim can be brought in habeas, does not mean that it must. *Osborne I,* 423 F.3d at 1055. For example, in *Wilkinson v. Dotson*, 544 U.S. 74 (2005), the Supreme Court recently considered whether a § 1983 action brought by two prisoners seeking only injunctive relief and challenging the constitutionality of parole eligibility and suitability hearings was barred by what has become known as *Heck's* "favorable termination" requirement. The Court found that it was not–finding that such claims, if successful, would not

"*necessarily* vitiate the legality of (not previously invalidated) state confinement." *Id.* at 81 (emphasis added). Instead, "success for [one plaintiff] d[id] not mean immediate release from confinement or a shorter stay in prison; it mean[t] at most a new eligibility review, which at most w[ould] speed *consideration* of a new parole application." *Id.* at 82 (italics original). "Success for [the other plaintiff] mean[t] at most a new parole hearing at which [state] parole authorities m[ight] in their discretion, decline to shorten his prison term." *Id.* Because neither of these scenarios "would necessarily demonstrate the invalidity" of either plaintiff's confinement or its duration, both were "cognizable under § 1983." *Id.*

These authorities pre-dated *Osborne*, where the Plaintiff, a state prisoner like Plaintiff in this case, filed a § 1983 action seeking to compel the state of Alaska to release biological evidence used to convict him in 1994 of kidnaping and assault. *Osborne I*, 423 F.3d at 1051. The district court dismissed Osborne's complaint for failing to state a claim, however, finding that because he sought to "set the stage" for an attack on the validity of a criminal conviction that had yet to be invalidated, his sole remedy was a writ of habeas corpus. *Id.* (citing *Heck*, 512 U.S. at 477).

The Ninth Circuit reversed, however, and once again addressing the interplay between § 1983 and habeas corpus, found that *Heck* "does not bar a prisoner's § 1983 action seeking post-conviction access to biological evidence in the government's possession." *Osborne I*, 423 F.3d at 1054. The Ninth Circuit found it "clear ... as a matter of logic, that success in such an action would not 'necessarily demonstrate the invalidity of confinement or its duration," *id*. (quoting *Wilkinson*, 544 U.S. at 78), because: 1) "success would yield only *access* to the evidence–nothing more," 2) "further DNA analysis may prove exculpatory, inculpatory, or inconclusive; thus there is a significant chance that the results will either confirm or have no effect on the validity of [the plaintiff's] confinement;" and 3) "even if the results exonerate [the plaintiff], a separate action–alleging a separate constitutional violation altogether–would be required to overturn his conviction." *Id*. at 1054-55 (internal citations omitted).

///

On remand, the district court then concluded, as matter of first impression, that "there

*does* exist, *under the unique and specific facts presented*, a very limited constitutional right" to access biological evidence for the purpose of subjecting it to DNA testing. *Osborne v. District Attorney's Office*, 445 F. Supp. 2d 1079, 1081 (D. Alaska 2006) (italics original). The district court expressly limited the contours of such a claim, however, noting that its conclusion was premised on the following: 1) the testing sought was not available at the time of the plaintiff's trial; 2) the testing sought could be "easily performed without cost or prejudice to the Government," and 3) the test results could "either confirm Plaintiff's guilt or provide evidence upon which Plaintiff might seek a new trial." *Id.* Specifically, the court noted its conclusion "assume[d] the availability of the evidence sought," because "[i]f the evidence were no longer available, for any legitimate reason, there [would] exist[] no right to test it and no basis upon which Plaintiff could pursue the issue further." *Id.* at 1082.

The state appealed the district court's conclusion, but in *Osborne II*, the Ninth Circuit affirmed, holding that:

> Osborne's right to due process of law prohibits the State from denying him reasonable access to biological evidence for the purpose of further DNA testing, where that biological evidence was used to secure his conviction, the DNA testing is to be conducted using methods that were unavailable at the time of trial and are far more precise than the methods that were then available, such methods are capable of conclusively determining whether Osborne is the source of the genetic material, the testing can be conducted without cost or prejudice to the State, and the evidence is material to available forms of post-conviction relief.

521 F.3d at 1141-42. The Court was again careful, however, to limit its holding to only the "certain set of circumstances" present in Osborne's case, and, left "for another day" questions such as:

> whether the scope of the right of post-conviction access should be broader or flexible to accommodate different circumstances, whether the materiality standard for post-conviction access-to-evidence claims should be less stringent or defined in a different manner, and whether prisoners with a less compelling case might also be entitled to post-conviction access.

*Id.* at 1142.

///

The Supreme Court has granted certiorari in *Osborne II*, but has yet to issue its opinion.

In the meantime, however, *Osborne* remains binding precedent in this Circuit. Thus, this Court must decide whether Plaintiff's Complaint alleges a set of circumstances similar to those held cognizable under § 1983 in *Osborne I & Osborne II*, or whether Plaintiff's allegations are sufficiently distinguishable such that they require dismissal pursuant to FED.R.CIV.P. 12(b)(6). *See Johnson*, 534 F.3d at 1121-22 (dismissal is appropriate under Rule 12 if a complaint "lack[s] ... a cognizable legal theory" which would entitle the plaintiff to relief).

### i. Dumanis appropriate Defendant

As a preliminary matter, the Court notes that to the extent Plaintiff's Complaint seeks only equitable and injunctive relief in the form of court-ordered access to physical evidence used against him at trial for purposes of post-conviction DNA testing, Defendant Dumanis, in her official capacity as the District Attorney for the County of San Diego, appears to be the appropriate defendant. *See Osborne II,* 521 F.3d at 1122; *Walters v. Superior Court*, 80 Cal. App.4th 1074, 1076-77 (Cal. Ct. App. 2000) (physical evidence collected during investigation of a criminal proceeding is the responsibility of the prosecutor and not that of some third party in possession).

### ii. Whether Plaintiff states a claim under *Osborne*

However, while Dumanis acknowledges *Osborne,* she claims Plaintiff's Complaint must nevertheless be dismissed because *Osborne* held such a right existed only "under the unique and specific facts of [that] case and *assum[ed] the availability of the evidence in question*." (Dumanis MTD at 5-6 *quoting Osborne II*, 521 F.3d at 1122 (emphasis added).) Dumanis asserts that because Plaintiff "affirmatively alleges that he was informed by the District Attorney's 'DNA Project' and by others that the evidence in question no longer exists," he has failed to state a due process claim under *Osborne*. (*Id*. at 6, *citing* Compl. at ¶¶ 25, 42, 45, 50, 66, 68, 72.) The Court agrees. To the extent Plaintiff claims the physical evidence he seeks no longer exists, and to the extent he affirmatively admits the California Penal Code § 1405 motion he filed in San Diego Superior Court was denied because he "failed to show the material sought for testing is available," *see* Compl. ¶¶ 25, 68, 44, 45, 65, 66, 67, 83-85, Plaintiff has failed to state a due process claim cognizable under § 1983. *See Osborne II*, 521 F.3d at 1122, 1127-28

(noting that cognizability of due process claim to post-conviction access to evidence in § 1983 action depends, in part, on the "availability of the evidence sought.") "If the evidence [is] no longer available, for any legitimate reason, there exists no right to test it and no basis upon which Plaintiff could pursue the issue further." *Id.* at 1128 (citation omitted).

Finally, to the extent Plaintiff seeks relief in this § 1983 action based on claims that evidence was destroyed in "bad faith" and in violation of his Sixth, Eighth or Fourteenth Amendment rights, this is a claim arising under *Brady v. Maryland*, 373 U.S. 83 (1963) and its progeny, and "not the sort of relief that can be granted under *Osborne*." (Dumanis MTD at 6.) Unlike the limited situation presented in *Osborne,* allegations that Dumanis' predecessors "intentionally ordered ... DNA evidence to be destroyed" "in bad faith to hide the true exculpatory results," see Compl. ¶ 85, *would* necessarily imply or demonstrate the invalidity of Plaintiff's confinement or its duration, and thus, may not be raised in a § 1983 suit unless Plaintiff has already invalidated his underlying conviction. *Heck*, 512 U.S. at 486-87; *Wilkinson*, 544 U.S. at 81.

This is because in order to prevail on destruction of evidence claim, Plaintiff would have to prove both that the now-unavailable biological evidence admitted against him at trial "possess[ed] an exculpatory value that was apparent before the evidence was destroyed, and [was] of such a nature that [he] would be unable to obtain comparable evidence by other reasonably available means," *California v. Trombetta*, 467 U.S. 479, 488-89 (1984), and that it was destroyed "in bad faith." *See Arizona v. Youngblood*, 488 U.S. 51, 58 (1988) ("unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law"). A determination that Plaintiff is entitled to declaratory or injunctive relief because the state or its agents in bad faith destroyed or failed to preserve material exculpatory evidence *would*, unlike the limited due process right to merely *access* available evidence for purposes of subjecting it to advanced DNA testing, necessarily demonstrate the invalidity of his conviction. *See Strickler v. Greene* 527 U.S. 263, 266 (1999) (upon the showing of a *Brady* violation, the defendant is entitled to a new trial); *see also Ciria v. Rubino*, 2008 WL 4287558 at \*6-7 (N.D. Cal. Sept. 17, 2008) (unpub.)

(concluding that unlike the due process right to access in *Osborne*, a plaintiff "cannot avoid the *Heck* bar" if he asserts a *Brady* violation in his § 1983 complaint).

Thus, because Plaintiff's Complaint affirmatively admits he has for more than two decades been unsuccessful in overturning his 1982 conviction either on direct appeal, or through multiple state and federal post-conviction habeas proceedings, *see* Compl. at ¶¶ 25, 27-34, 39-40, 82, his bad faith destruction of biological evidence claims arising under *Brady, Trombetta* and *Youngblood* may not proceed pursuant to § 1983. Instead, Plaintiff's exclusive remedy, one to which he has unsuccessfully resorted several times in the past, is habeas corpus. *See Ybarra v. Reno Thunderbird Mobile Home Village*, 723 F.2d 675, 682 (1984) (concluding that § 1983 action seeking declaratory judgment based on prosecutor's alleged failure to preserve *Brady* evidence required dismissal because "in order to prevail on this claim, [plaintiff] must collaterally void his state court conviction") (citing *Preiser*, 411 U.S. at 500).)

In conclusion, the Court finds that Plaintiff's claims against Defendant Dumanis are not like those found as cognizable in *Osborne*, and as such, they must be dismissed for failing to state a claim upon which § 1983 relief can be granted. *See Twombly*, 550 U.S. at ___, 127 S. Ct. at 1974; *Johnson*, 534 F.3d at 1121-22.

Moreover, because the Court finds amendment of Plaintiff's § 1983 claims would be futile, leave to amend is denied. *See Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 339 (9th Cir. 1996) (denial of a leave to amend is not an abuse of discretion where further amendment would be futile); *see also Robinson v. California Bd. of Prison Terms*, 997 F. Supp. 1303, 1308 (C.D. Cal. 1998) ("Since plaintiff has not, and cannot, state a claim containing an arguable basis in law, this action should be dismissed without leave to amend; any amendment would be futile.") (citing *Newland v. Dalton*, 81 F.3d 904, 907 (9th Cir. 1996)).

**III. Conclusion and Order**

Based on the foregoing, the Court hereby:

1) **GRANTS** Defendant Brown's Motion to Dismiss pursuant to FED.R.CIV.P. 12(b)(6) [Doc. No. 10];

2) **GRANTS** Defendants Dreis' and San Diego Police Department's Motion to

1 | Dismiss pursuant to FED.R.CIV.P. 12(b)(6) [Doc. No. 12];

2 | 3) **GRANTS** Defendant Dumanis' Motion to Dismiss pursuant to FED.R.CIV.P.
3 | 12(b)(6) [Doc. No. 13]; and

4 | 4) **DISMISSES** Plaintiff's Complaint as to Defendant A. Fragoso pursuant to
5 | FED.R.CIV.P. 4(m).

6 | The Clerk shall close the file.

7 | **IT IS SO ORDERED**.

9 | DATED: March 3, 2009

_____
Hon. Thomas J. Whelan
United States District Judge